United States District Court
Middle District of Florida
Jacksonville Division

**OCTAVIA ELAINE BRYANT,**

    *Plaintiff,*

v.                                                                **NO. 3:16-CV-966-J-PDB**

**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

## Order Affirming Commissioner's Decision

This is a case under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Acting Commissioner of Social Security denying Octavia Bryant's claim for disability insurance benefits and supplemental security income.[1] Bryant seeks reversal and remand based on the Administrative Law Judge's ("ALJ's") treatment of medical opinions of Dr. Susana Barsky, Dr. Lynn Harper-Nimock, and Dr. Ronald Joseph. Doc. 19.

---

[1]A claimant ordinarily must follow an administrative review process to receive benefits or judicial review of their denial. *Bowen v. City of New York*, 476 U.S. 467, 471−72 (1986). A state agency acting under the Commissioner's authority makes an initial determination. 20 C.F.R. §§ 404.900−404.906, 416.1400−416.1406. If dissatisfied with the initial determination, the claimant may ask for reconsideration. 20 C.F.R. §§ 404.907−404.918, 416.1407−416.1418. If dissatisfied with the reconsideration determination, the claimant may ask for a hearing before an Administrative Law Judge ("ALJ"). 20 C.F.R. §§ 404.929−404.943, 416.1429−416.1443. If dissatisfied with the ALJ's decision, the claimant may ask for review by the Appeals Council. 20 C.F.R. §§ 404.967−404.982, 416.1466−416.1482. If the Appeals Council denies review, the claimant may file an action in federal district court. 20 C.F.R. § 404.981, 416.1481.

The Commissioner substantially revised regulations on the consideration of medical evidence for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017). Because Bryant filed her claim before then, citations are to regulations in effect on the date of the ALJ's decision.

## I. Background

Bryant was born in 1964 and last worked in September 2011. Tr. 296, 333. She has a high-school education and experience as a driver, nurse, and sorter. Tr. 334. She alleges she became disabled in November 2011 from carpal tunnel syndrome, a bulging disc, a rotator-cuff tear, a cracked clavicle, and depression. Tr. 333. She is insured through 2015. Tr. 306. She proceeded through the administrative process, failing at each level. Tr. 1–7, 31–54, 150–223, 226–36. This case followed. Doc. 1.

## II. Evidence

This order adopts the summaries of facts in the ALJ's decision, Tr. 39–46, and the parties' briefs, Doc. 19 at 3–14; Doc. 20 at 2–3. Some evidence pertinent to the arguments is also summarized below.

### A. Dr. Harper-Nimock

In July 2012, Dr. Harper-Nimock performed a consultative physical evaluation. She observed Bryant "appeared to be in no acute distress"; had a normal gait and stance; could rise from a chair with difficulty; used no assistive device; could not walk on heels or toes or squat; needed help changing; and needed help getting on and off the examination table. Tr. 532–33. Regarding Bryant's musculoskeletal system, Dr. Harper-Nimock made the following observations:

> Cervical spine showed decreased flexion, extension, lateral flexion, and decreased rotatory motion bilaterally. Mild kyphosis of the thoracic spine. Lumber spine showed decreased flexion, extension, lateral flexion, and decreased rotatory motion bilaterally. [Straight leg raise] negative bilaterally. The claimant has decreased [range of motion] of shoulders bilaterally. Decreased [range of motion] of right elbow. Full [range of motion] of left elbow. Decreased [range of motion] of forearms and wrists bilaterally. Decreased [range of motion] of hips bilaterally. Full [range of motion] of knees and ankles bilaterally. No evident subluxations, contractures. There was tenderness to palpation of both shoulders, but no warmth. There was mild crepitation noted of both shoulders, but no effusion. No trigger points noted.

Tr. 533. Dr. Harper-Nimock observed Bryant had no sensory deficit; full strength in both legs; decreased strength in both arms; and decreased grip strength in her right hand. Tr. 534.

Under, "FINE MOTOR ACTIVITY OF HANDS," Dr. Harper-Nimock stated, "The claimant had decreased grip on the right of 3+/5+, on the left it was 5+/5+. Dexterity remained intact to writing, but [she] could not open a jar and could not tie a bow or button a button with the right hand." Tr. 534.

Dr. Harper-Nimock diagnosed Bryant with degenerative disc disease with radiculopathy, degenerative joint disease, right rotator-cuff impairment, bilateral carpal tunnel syndrome, hypertension, hiatal hernia, diverticulitis, and total abdominal hysterectomy, and opined her prognosis was poor. Tr. 534.

Under, "MEDICAL SOURCE STATEMENT," Dr. Harper-Nimock opined, "The claimant has moderate limitation for pushing, pulling, and heavy lifting." Tr. 534.

### B.  Dr. Joseph

In September 2012, Dr. Joseph completed a physical residual functional capacity ("RFC") assessment and provided the following opinions. Bryant's pain or other symptoms are frequently or constantly severe enough to interfere with attention and concentration needed to perform even simple work tasks. Tr. 577. She can walk less than 3 city blocks without rest or severe pain. Tr. 577. She can sit for 10 minutes at a time and stand for 10 minutes at a time. Tr. 577–78. He is unsure how long she can sit, stand, or walk total in an 8-hour workday. Tr. 578. She needs periods of walking around during an 8-hour workday, but he is unsure how often or how long she must walk. Tr. 578. She needs a job that would allow shifting positions at will, and she would need to take unscheduled breaks. Tr. 578. She "probably" needs a cane or other assistive device when walking or standing. Tr. 578. She can occasionally lift less than 10 pounds, rarely lift 10 or 20 pounds, and never lift 50 pounds. Tr. 578. She can rarely look up or down and can never turn her head right or

3

left or hold it in a static position. Tr. 578. She can never twist, stoop, crouch, climb ladders, or climb stairs. Tr. 579. In response to, "Does your patient have significant limitations with reaching, handling or fingering?," Dr. Joseph checked "Yes" and "No" and circled "reaching" and "handling or fingering." Tr. 579.

In August 2014, Dr. Joseph completed a second physical RFC assessment providing the same opinions. Tr. 933–36.

## C. *Dr. Barsky*

In November 2012, Dr. Barsky performed a consultative mental evaluation. Bryant's sister drove her to the evaluation and accompanied her to the interview. Tr. 553. Under, "MENTAL STATUS EXAMINATION," Dr. Barsky made the following observations. Bryant was cooperative but evasive "as she was a poor historian." Tr. 555. She had adequate social skills, personal hygiene, eye contact, and language. Tr. 555. She had a normal gait and posture. Tr. 555. Her motor behavior was restless, and she "fidgeted with her hands throughout the evaluation and frequently rubbed her face." Tr. 555. She spoke clearly with a monotone quality. Tr. 555. Her thought process was "impoverished and focused on negative content." Tr. 555. She had an anxious and depressed affect, a dysthymic mood, and a mildly impaired sensorium. Tr. 555. She was oriented as to person, place, and time. Tr. 555. She showed mildly impaired attention and concentration and could complete simple calculations with difficulty, closing her eyes and responding slowly. Tr. 555. She had impaired recent and remote memory, was slow to respond to memory tests, and had difficulty responding. Tr. 555. Her cognitive functioning was average, her general fund of information was "somewhat limited," and her insight and judgment were fair to guarded. Tr. 555.

Bryant reported the following information about herself. She can dress, bathe, and groom herself but needs help when pulling clothes over her head. Tr. 555. She cannot prepare food due to an inability to use her right harm. Tr. 555. She cannot clean or do laundry, and she cannot shop unless she has a "wheelchair cart" due to

4

an inability to walk for long periods of time. Tr. 555. She cannot manage her own money. Tr. 555–56. She can drive short distances and take public transportation. Tr. 556. She has supportive friends and family. Tr. 556. She enjoys going to church, reading, and watching television. Tr. 556.

> Under, "MEDICAL SOURCE STATEMENT," Dr. Barsky opined:
>
> The Claimant appears able to follow and understand simple directions and instructions; she appears able to perform simple tasks independently; she appears limited in her ability to maintain attention and concentration; she appears limited in her ability to maintain a regular schedule; she appears limited in her ability to learn new tasks or to complete more complex tasks independently. She appears to have a mildly limited capacity to relate to others adequately. She appears limited in her capacity to make appropriate decisions and limited in her capacity to deal with stress appropriately.

Tr. 556. Bryant's prognosis is fair due to a "long history of adequate functioning." Tr. 557. Dr. Barsky added Bryant would "need assistance in managing her funds." Tr. 557.

### D. *Hearing Testimony*

At a 2014 hearing, Bryant testified as follows.

She became unable to work in November 2011 after an incident during which a police officer tore the rotator cuff in her right shoulder, which led to neck pain. Tr. 63–64. On a scale of 1 to 10, her neck pain averages about an 8 and is a 10 at its worst. Tr. 64. It radiates down her right arm and into her hand. Tr. 65–66. The pain in her right arm is about a 10, and the pain in her left arm is about an 8. Tr. 67. The pain in her right shoulder is about a 10. Tr. 68. She also gets lower-back pain, which ranges between an 8 and a 10. Tr. 69. She has left-knee pain which averages about an 8. Tr. 69. Moving around exacerbates the pain. Tr. 64.

Epidurals and trigger point injections have not helped her neck pain. Tr. 64–65. A doctor recommended neck surgery. Tr. 65. At first, she was reluctant to undergo

5

surgery, but now she has no insurance or money for it. Tr. 65. She had surgery on her right shoulder, but it did not help. Tr. 68. She takes pain medication and uses pain lotion, which relieves pain for about 3 hours. Tr. 70. She spends about "90 percent" of the day in a recliner. Tr. 75.

She has difficulties using her right arm to reach above and in front of her. Tr. 66. She can type on a keyboard for about 10 minutes before it hurts. Tr. 66–67. She cannot write by hand. Tr. 67. She also has problems in her left arm, but they are not as bad. Tr. 67. She cannot use her left hand to type or write by hand. Tr. 67. On an ordinary day, her son cooks breakfast, and she eats breakfast and takes medication. Tr. 70. She showers with help from her daughter-in-law. Tr. 70. She is afraid to shower by herself because she once slipped in a tub. Tr. 70. She now has a shower chair. Tr. 71. She has trouble dressing herself if she needs to button or pull a shirt over her head. Tr. 71–72. She has trouble using her fingers for fine manipulation because her hands shake from anxiety. Tr. 72. She has trouble putting on shoes and socks because she cannot bend. Tr. 73. She has trouble standing while shopping for groceries. Tr. 75. She has been using an electric cart to grocery shop for about two-and-a-half years. Tr. 75. She does no housework. Tr. 75. She can sit in a chair for about 15 minutes at a time, stand for about 11 minutes at a time, and walk 2 blocks at a time. Tr. 75–76. She has trouble opening jars and turning doorknobs. Tr. 76. She can safely lift 10 pounds. Tr. 76.

She has trouble sleeping and can sleep for about 3 hours a night. Tr. 73. She naps for about 4 hours a day to make up for lack of sleep at night. Tr. 73. She has panic attacks lasting about 30 minutes about twice a week. Tr. 74. She has memory and concentration problems and forgets appointments. Tr. 74.

The ALJ asked a vocational expert ("VE") to consider a person the same age as Bryant and with the same education and past work experience who could occasionally lift 20 pounds; could frequently lift 10 pounds; could stand, walk, and sit for 6 hours in an 8-hour day with normal breaks; would have no limitation in balancing,

6

fingering, and feeling; could frequently push and pull hand controls with her right hand, climb ramps and stairs, kneel, crouch, and crawl; could occasionally climb ladders, ropes, and scaffolds, stoop, reach overhead with the right hand, and grasp with the right hand; would need to avoid concentrated exposure to extreme heat, vibrations, and hazards such as machinery and heights; could understand and remember simple instructions but no detailed instructions; could sustain sufficient concentration and attention for extended periods as required to complete simple, routine, repetitive tasks; would have some difficulty adapting to change but could function in a stable work environment with changes introduced gradually; could consistently and usefully perform routine tasks on a sustained basis with minimal (normal) supervision; could cooperate effectively with the public and coworkers; could adapt over time to most changes in demands; and could make simple decisions and take appropriate precautions for normal hazards. Tr. 80–82. The VE responded that person could not perform Bryant's past work but could perform other available light jobs (usher, counter clerk, and school bus monitor) and sedentary jobs (surveillance-system monitor and call-out operator). Tr. 84–85.

Using Dr. Joseph's opinions, the ALJ asked the VE to consider a person the same age as Bryant and with the same education and work experience who could walk less than three blocks; sit for less than 10 minutes; stand for less than 10 minutes; would need to alternate positions at will every 10 minutes; could occasionally lift less than 10 pounds and rarely lift 10 to 20 pounds; could never turn her head right or left or hold her head in a static position; could rarely look down or up; and could never perform other postural activities. Tr. 86. The VE responded the person could not perform available work. Tr. 87. He opined the most significant limitations in the hypothetical concerned lifting, head-movement, and postural limitations. Tr. 87.

Bryant's counsel asked whether a person with the same limitations as the first hypothetical but who would need to use a hand-held assistive device when standing

or walking could perform the counter clerk and bus monitor jobs. Tr. 87. The VE testified that limitation would reduce but not eliminate the usher and counter clerk jobs and would significantly reduce the availability of bus monitor jobs. Tr. 87–88. He opined it would reduce usher jobs by 25 percent, counter clerk jobs by 30 percent, and school bus monitor by 80 to 90 percent. Tr. 88.

The VE opined the "acceptable level of absenteeism" for the identified jobs would be one day or less a month. Tr. 89. He opined the standard acceptable amount of time off-task is, on average, 20 percent of a workday. Tr. 90.

## III. ALJ's Decision

At step one,[2] the ALJ found Bryant has not engaged in substantial gainful activity since November 4, 2011. Tr. 36.

At step two, the ALJ found Bryant suffers from severe impairments of degenerative disc disease of the cervical spine, right-shoulder degenerative joint disease, status post-arthroscopy and repair, mild right-sided carpal tunnel syndrome, obesity, dysthymic disorder/major depressive disorder with psychotic symptoms, and generalized anxiety disorder. Tr. 36. He found her mild left-knee degenerative joint disease and hypertension are not severe. Tr. 36.

At step three, the ALJ found Bryant has no impairment or combination of impairments that meets or medically equals the severity of any listed impairment in

---

[2]The Social Security Administration uses a five-step sequential process to decide if a person is disabled, asking whether (1) she is engaged in substantial gainful activity, (2) she has a severe impairment or combination of impairments, (3) the impairment meets or equals the severity of anything in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App'x 1, (4) she can perform any of her past relevant work given her RFC, and (5) there are a significant number of jobs in the national economy she can perform given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "Past relevant work is work [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough … to learn to do it." 20 C.F.R. §§ 404.1560, 416.960.

8

20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 37. He particularly considered listing 12.06 (anxiety disorders). Tr. 37.

The ALJ considered the "paragraph B"[3] criteria. Tr. 37–38. He found Bryant has mild restrictions in activities of daily living; mild difficulties in social functioning; and moderate difficulties maintaining concentration, persistence, and pace; and has had no episode of decompensation of extended duration. Tr. 37–38. He also considered the "paragraph C"[4] criteria and found she does not meet them. Tr. 38.

After stating he had considered the entire record, the ALJ found Bryant has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)[5] with additional limitations:

> [T]he claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit, stand, and walk, each, for six hours in an eight hour workday with normal breaks. Despite a limited use of the upper extremity on the right arm for pushing and pulling, the claimant is able to frequently push and pull hand controls on the right. The claimant can frequently climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds. The claimant has no limitation in balancing. The claimant can occasionally stoop and frequently kneel, crouch, and crawl. The claimant can only reach overhead on the right occasionally, and the claimant can occasionally use the right hand for

---

[3]The criteria in paragraph B are used to assess functional limitations imposed by medically determinable mental impairments. 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.00(C). Paragraph B requires a disorder of medically documented persistence resulting in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulty maintaining social functioning; (3) marked difficulty maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.06.

[4]Paragraph C lists additional functional criteria for some listings. 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.00(A).

[5]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

9

grasping. The claimant is right-handed. The claimant has no limitation in fingering and feeling. The claimant should avoid concentrated exposure to extreme heat, vibrations, and hazards such as machinery and heights. The claimant would have difficulty with detailed instructions but would be able to understand and remember simple instructions. (No detailed instructions, just short simple instructions.) The claimant can sustain sufficient concentration and attention for simple, routine, repetitive tasks. The claimant will be able to function with a stable work assignment, which is defined as the need to have changes introduced gradually. The claimant can understand, retain, and carry-out simple instructions. The claimant can consistently and usefully perform routine tasks on a sustained basis with minimal (normal) supervision, cooperate effectively with the public and co-workers in completing simple tasks and transactions, adapt over time to most changes and task demands, make simple decisions and take appropriate precaution for normal hazards.

Tr. 38–39.

The ALJ gave Dr. Barsky's opinions "great weight," finding them "consistent with the limitations … in the [RFC] as well as the claimant's subsequent lack of treatment for mental health impairments." Tr. 44.

The ALJ found Dr. Harper-Nimock's opinion that Bryant has moderate limitations in pushing, pulling, and heavy lifting consistent with the RFC assessment. Tr. 41.

The ALJ gave Dr. Joseph's opinions "very little weight," explaining:

[T]he restrictions are not supported by the clinical or laboratory diagnostic techniques in the file, particularly the opinions related to the need for an assistive device, limitations in walking, and postural limitations as the claimant has no conditions of the lumbar back, hips, or lower extremities. As to the opinions related to her other conditions, the opinions are not consistent with the claimant's overall lack of consistent treatment, her history of conservative treatment, or other medical opinions in the record, particularly those of examining physician Dr. Harper-Nimock or the reviewing state Agency experts.

Tr. 43.

At steps four and five, the ALJ found Bryant cannot perform her past relevant work but can perform jobs the VE identified (usher, counter clerk, and school bus monitor) and those jobs exist in significant numbers in the national economy. Tr. 48–49. He therefore found no disability. Tr. 50.

## IV. Standard of Review

A court's review of an ALJ's decision is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports his findings. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is "less than a preponderance"; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* A court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Id.* A court must affirm the ALJ's decision if substantial evidence supports it, even if the evidence preponderates against the factual findings. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

## V. Law & Analysis

Regardless of its source, the Social Security Administration "will evaluate every medical opinion" it receives. 20 C.F.R. §§ 404.1527(c), 416.927(c). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of … impairment(s), including … symptoms, diagnosis and prognosis, what [one] can still do despite impairment(s), and … physical or mental restrictions." 20 C.F.R. § 404.1527(a), 416.927(a). A medical source statement is an opinion on what a claimant can still do despite any impairment. *See* 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6). Opinions on dispositive issues, such as whether a claimant is disabled, are not medical opinions because they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

An ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176,

1179 (11th Cir. 2011). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of a claim is rational and supported by substantial evidence." *Id.* "Unless [an ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (internal quotation marks omitted). If an ALJ does not "state with at least some measure of clarity the grounds for his decision," a court will not affirm simply because some rationale might have supported it. *Winschel*, 631 F.3d at 1179.

A treating source is a physician, psychologist, or other acceptable medical source who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the treatment or evaluation required for the medical condition. 20 C.F.R. §§ 404.1502, 416.902.

The Social Security Administration generally will give more weight to the medical opinions of treating sources because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ need not give more weight to a treating source's opinion if there is good cause to do otherwise. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists if the evidence does not bolster the opinion, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the treating source's own medical records. *Id.* at 1240−41.

Unless the Social Security Administration gives a treating source's opinion controlling weight, it will consider several factors to decide the weight to give a medical opinion: examining relationship, treatment relationship, supportability, consistency, specialization, and any other relevant factor. 20 C.F.R. §§ 404.1527(c), 416.927(c). "The law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

Failure to explicitly state the weight given to an opinion is harmless if the opinion is consistent with the ALJ's decision and the decision is in-depth, shows thoughtful consideration of the findings, and does not leave the court wondering how the ALJ reached the decision. *Colon v. Colvin*, 660 F. App'x 867, 870 (11th Cir. 2016); *see also East v. Barnhart*, 197 F. App'x 899, 901 n.3 (11th Cir. 2006) (any error in failing to explicitly address consulting psychologist's report was harmless because observations in report were consistent with the ALJ's determination). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

A claimant's RFC is the most she can still do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The Social Security Administration uses the RFC at step four to decide if she can perform any past relevant work and, if not, at step five with other factors to decide if there are other jobs in significant numbers in the national economy she can perform. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(5).

### A.   Dr. Barsky

Bryant argues the ALJ erred in failing to account for limitations Dr. Barsky found despite stating he was giving great weight to her opinions. Doc. 19 at 15–18. She points to Dr. Barsky's opinions that Bryant had trouble with simple calculations, needed assistance managing her funds, appeared limited in her ability to maintain attention and concentration, appeared limited in her ability to maintain a regular

13

schedule, appeared limited in her ability to make appropriate decisions, and appeared limited in her ability to deal appropriately with stress. Doc. 19 at 17–18. She argues the ALJ implicitly rejected portions of the opinion without explanation, and relying on any post-hoc justification would be improper. Doc. 19 at 18. The Commissioner responds the RFC accounts for all limitations Dr. Barsky found. Doc. 20 at 5–7.

By finding Bryant can "sustain sufficient concentration and attention for simple, routine, repetitive tasks"; function in a stable work environment with changes introduced gradually; understand, retain, and carry out simple instructions; consistently perform routine tasks on a sustained basis with minimal supervision; "cooperate effectively with the public and coworkers in completing simple tasks and transactions"; "adapt over time to most changes and task demands"; and make simple decisions, the ALJ accounted for the limitations Dr. Barsky found. Tr. 39.

Neither Dr. Barsky's observation that Bryant was slow to complete simple calculations nor her statement that Bryant would need help managing funds is an opinion on a work-related functional limitation. The former is an examination finding Dr. Barsky used to inform her medical source statement, and the latter appears to be a recommendation if Bryant receives benefits. *See* Tr. 555–57.

On Bryant's ability to maintain attention and concentration, at step three, the ALJ found she "is moderately limited as to concentration but can persist and pace herself for simple activities, such as the record demonstrates in her typical daily activities," pointing to her ability to self-structure her daily routine, which includes shopping, preparing meals, performing household chores, and driving to shop for groceries. Tr. 38; *see* Tr. 347, 528. Recognizing the RFC assessment "requires a more detailed assessment by itemizing various functions," the ALJ more particularly described the finding concerning Bryant's ability to maintain attention and concentration. Tr. 39. The RFC limitations adequately accounted for Dr. Barsky's opinion. *See Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 872 (11th Cir. 2011) ("[A]n ALJ's hypothetical restricting the claimant to simple and routine tasks

adequately accounts for restrictions related to concentration, persistence, and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite concentration deficiencies." (citing *Winschel*, 631 F.3d at 1180–81)). Likewise the opinion that Bryant appeared limited in her ability to maintain a regular schedule. Substantial evidence supports that she can maintain a simple, stable routine, *see* Tr. 347, 528, and she identifies no evidence supporting that Dr. Barsky's opinion suggests greater limitations.

Bryant appears to read many of Dr. Barsky's opinions as indicating she cannot meet the mental demands at all. That Dr. Barsky found limitations in those areas does not mean she opined Bryant has no ability in those areas. The ALJ's RFC assessment demonstrates he read the opinion and does not leave the Court wondering how he reached his decision.

Remand to reconsider Dr. Barsky's opinions is unwarranted.

## B.  *Dr. Harper-Nimock*

Bryant takes issue with the ALJ's treatment of Dr. Harper-Nimock's opinion concerning Bryant's ability to use her fingers, pointing to Dr. Harper-Nimock's statement under, "FINE MOTOR ACTIVITY OF HANDS," that Bryant "had decreased grip on the right of 3+/5+, on the left it was 5+/5+. Dexterity remained intact to writing, but [she] could not open a jar and could not tie a bow or button a button with the right hand." Doc. 19 at 19–21 (quotation from Tr. 534). Bryant argues the ALJ erroneously failed to state the weight he was giving that opinion, the ALJ incorrectly found it consistent with the RFC, and the opinion is consistent with her testimony and report to many doctors she has trouble using her hands. Doc. 19 at 19–21.

The Commissioner responds Dr. Harper-Nimock's opinion does not suggest Bryant has no ability to use her right-hand fingers because Dr. Harper-Nimock observed Bryant can still write, which requires fingering; Dr. Harper-Nimock set

15

forth limitations only with respect to pushing, pulling, and heavy lifting in the medical source statement; the ALJ did not have to cite each statement in Dr. Harper-Nimock's examination notes; the ALJ implicitly gave the opinion weight because moderate limitations were consistent with the RFC; and any error is harmless because jobs the ALJ found she can still do require only occasional or no fingering. Doc. 20 at 8−9.

The ALJ did not commit reversible error. Dr. Harper-Nimock's statement under, "FINE MOTOR ACTIVITY OF HANDS," set forth examination findings that she did not include in her "MEDICAL SOURCE STATEMENT," in which she opined Bryant has limitations only with respect to pushing, pulling, and heavy lifting. Tr. 534. By stating, "the claimant was opined to have a 'moderate' limitation for pushing, pulling, and heavy lifting which is consistent with the [RFC]," and by including lifting, pushing, and pulling limitations but no handling, feeling, or fingering limitations in the RFC, *see* Tr. 38–39, 41, the ALJ implicitly gave great weight to Dr. Harper-Nimock's opinions.

In any event, even assuming error, Bryant does not show it is harmful. Of the jobs the ALJ found she could perform, one—school bus monitor—requires no handling, fingering, or feeling. *See* Dep't of Labor, *Dictionary of Occupational Titles* ("DOT"), No. 372.667-042, 1991 WL 673102. Had the ALJ limited Bryant to no handling, fingering, or feeling, she could still do that job.

Remand to reconsider Dr. Harper-Nimock's opinions is unwarranted.

## C.    *Dr. Joseph*

Bryant argues substantial evidence does not support the ALJ's reasons for giving little weight to Dr. Joseph's opinions concerning her ability to lift, move her neck, and stoop. Doc. 19 at 23–25. The Commissioner responds substantial evidence supports the ALJ's reasons for giving little weight to Dr. Joseph's opinions; though not cited in the ALJ's decision as a reason for rejecting the opinions, they were

internally inconsistent and equivocal; and any error in failing to find further limitations in stooping was harmless. Doc. 20 at 12–16.

Bryant links the lifting and neck-movement limitations to her "cervical spine condition," which she observes was severe enough that Dr. Joseph recommended surgery. Doc. 19 at 23. The ALJ gave little weight Dr. Joseph's opinions concerning limitations arising from Bryant's cervical impairment, finding them unsupported by "the clinical or laboratory diagnostic techniques in the file" and "inconsistent with [Bryant's] overall lack of consistent treatment, her history of conservative treatment, or other medical opinions in the record." Tr. 43. Those reasons amount to good cause, and substantial evidence supports them.

On clinical or laboratory diagnostic techniques, the ALJ observed the most recent imaging of Bryant's cervical spine (from May 2014) was fairly unremarkable, showing minimal degenerative disc disease, "tiny" central disc protrusions, minimal canal stenosis without cord-signal change, and no neural foraminal narrowing. Tr. 47; *see* Tr. 668–69.

On consistency of treatment, the ALJ observed objective examinations were inconsistent, as Bryant "tends to exhibit greater limitations at the appointments where she is specifically seeking treatment for her neck and arms while showing no symptoms or mild symptoms at other presentations." Tr. 43, 47. He pointed to emergency-room records from August and September 2012 showing Bryant was not in acute distress and had normal range of motion, normal strength, no tenderness, and no swelling. Tr. 43, 47; *see* Tr. 788–90, 828–29.

On the conservative nature of treatment, the ALJ observed Bryant was primarily treated with pain medication, injections, and physical therapy. Tr. 40–41, 45; *see* Tr. 399, 518, 544–45, 558–59, 563, 566, 599, 867, 869, 871, 874–75, 878, 881, 889, 891–94, 938, 940, 942, 944. Bryant points to Dr. Joseph's surgery recommendation as evidence her cervical-spine impairment warranted more than

17

just conservative treatment. Doc. 19 at 25. But the ALJ recognized Dr. Joseph had frequently recommended cervical fusion and acknowledged Bryant had asserted she lacks financial resources for more significant treatment. He gave little weight to that assertion because she had "not provided any evidence that she has sought low[-]cost or no[-]cost treatment options that are available in the area." Tr. 40–42, 45–47.

The ALJ also observed Dr. Joseph's opinions conflicted with other opinions in the record. Tr. 43. Substantial evidence supports that observation. The state-agency evaluators opined Bryant could perform light work with additional limitations. Tr. 154–56, 180–85. Dr. Harper-Nimock opined Bryant had moderate limitations in pushing, pulling, and heavy lifting. Tr. 534. Those opinions contradict Dr. Joseph's more restrictive opinions, and the records described above provide good cause for the ALJ's decision to credit them over Dr. Joseph's opinions.

Bryant argues substantial evidence does not support the ALJ's finding she had no lumbar-spine condition, which he relied on in rejecting Dr. Joseph's opinion she cannot stoop. Doc. 19 at 23–24. She observes Dr. Joseph observed low-back pain and diagnosed her with lumbago, and other physicians observed limited range of motion. Doc. 19 at 23–24.

The ALJ rejected Dr. Joseph's opinions on Bryant's postural limitations in part because he found she had "no conditions of the lumbar back, hips, or lower extremities." Tr. 43. As Bryant observes, the record contains evidence of a lower-back impairment, including Dr. Joseph's diagnosis. *See* Tr. 532–33, 535, 540, 549, 576, 915, 933. But, as discussed, the ALJ also relied on other reasons supported by substantial evidence for rejecting the postural limitations Dr. Joseph found (inconsistent clinical and laboratory diagnostic techniques, Bryant's inconsistent and conservative treatment, and other medical opinions). *See* Tr. 43.

In any event, even assuming substantial evidence does not support the ALJ's rejection of Dr. Joseph's opinion on Bryant's ability to stoop, that error was harmless.

Of the jobs the ALJ found she could perform, two require no stooping. *See* DOT No. 372.667-042 (school bus monitor), 1991 WL 673102; DOT No. 249.366-010 (counter clerk), 1991 WL 672323. Had the ALJ limited Bryant to no stooping in accordance with Dr. Joseph's opinion, she still could perform those jobs.

Remand to reconsider Dr. Joseph's opinions is unwarranted

## VI. Conclusion

The Court **affirms** the Commissioner's decision and **directs** the clerk to enter judgment in favor of the Commissioner and close the file.

**Ordered** in Jacksonville, Florida, on September 26, 2017.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c: Counsel of Record